If everyone would be seated, we'll call the second case. 14-2680, First 38, NMN Project Company Council, who will be presenting argument, please step up and introduce themselves. Good morning, Your Honor. Jonathan Parker on behalf of the appellants. James E. Binnock on behalf of the appellees. I'm sorry, last name? I'm sorry, sir, could you? James Binnock. Okay, thank you. I'm David Gusman from Freeborn Peters on behalf of the NM Project Company. We did not file a brief, Your Honors, and so we will not be presenting argument under Rule 352, although we're here to answer any questions that come up during the course of this proceeding. We're, in fact, out in the middle here. We would like a ruling so we can close on the sale that we were hoping to close on. Okay, I appreciate that. The bill says we'll have 20 minutes. Is the appellant looking for time for rebuttal? Yes, I'd like to reserve five minutes for rebuttal. All right, thank you. Mr. Parker, you may begin. May it please the Court. Again, my name is Jonathan Parker, and I represent the appellants Peter and Holly Geraci. A contract is either ambiguous or it is not. That is the law in Illinois. Yet the circuit court here stated that there was a, quote, fair question on the ambiguity of the language, end quote, in the right of first refusal. It was at that moment that the circuit court committed a reversible error beyond which it could never recover. Mr. Parker, I want to ask you, let's go straight to the right of first refusal. Yes. Let's look at A. You indicated that you do not believe, your client does not believe it's ambiguous. So if we look at A, that paragraph, it appears that there are three different and distinct phrases used to describe what is ultimately submitted and tendered as a purchase offer on the unit. The first line says it's an acceptable bonafide offer. The second one says it's a third-party offer. And then at the very end, it says, I think it's under B, it says offer, just defined as a plain offer. So you've got three different phrases. You've defined one as the third-party offer. You started out as the acceptable bonafide offer. You end with just a plain generic offer, lowercase. Do you not think there's any ambiguity in those terms at all? I do not. Why is that? I think that if we're starting with A, acceptable bonafide offer is clear on its face. We argue that in our brief. Acceptable is widely understood meaning the price is right to cause the seller to desire to transfer title to the property. And bonafide means that the buyer has the intent and the willingness to consummate the transaction. There's no room for argument as to what those terms mean when all you do is to look at the face of the document itself. Okay, so then I assume that you just, it's assumed that a third-party offer refers to the acceptable bonafide offer, correct? In this paragraph? Correct. Okay. So then when we go down to, it kind of goes to the gist of the argument, receive an executed copy of the offer. What is the offer? The offer is the third-party offer. It's the only offer that there can be in this case. Okay, and what does that, what's the universe of the third-party offer that needs to be tendered to the holder of the right of first refusal? The offer to purchase the quote additional units which are defined within the right of first refusal as penthouse one and penthouse two, floors 39 and 40 at the Ritz Carlton condominium development. Okay, now I guess what I'm trying to say is what is the offer? Is it a contract? Is it a communication? Is it an email? Is it the attachments? Is it a wire transfer? What is the actual physical tangible thing that you submit to first 38? The thing that you submit to first 38 would be a written offer to purchase the additional units. Now in this case, what was that? In this case, it just so happens that NM Project Company supplies a form on which it asks offerors to make their offer. And while we're on the subject of conversation, I think it bears mentioning that one of the cases cited actually by the circuit court and not by us, the Kellner v. Bartman case, actually states that upon the sale on a right of first refusal, terms can be read by implication and custom. Everybody in this case knows that it was the custom of NM Project Company to accept offers on their form. There was no dispute that that was how this offer was going to be made. Everybody understood that. Now I'd love not to rely, obviously, on extrinsic evidence, but to the extent that we get to that, I think that that answers that question definitively without having to get into any further detail as to what the terms themselves mean. Okay, let's say we don't go to the extrinsic evidence yet. We look at the language of the right itself. Executed copy of the offer, right? This is what the dispute is all about. An executed copy, let's say it presumes that there's a signature, right? Executed by the actual offerors, right? What else? If there are attachments, inclusions, conditions precedent that are listed or identified in the offer that must be made, you know, required tender to the holder? The answer to that question is it depends on exactly what it is you're talking about. The answer may be yes or may be no. Looking at the language of the company. Let me stop you there. If it's yes or if it's no, it's not clear, is it? Because now what we're doing is we're going beyond the face of this document itself and we're interpreting the words of the third-party offer. So first, First 38 never negotiated for the right to interpret the meaning of the words in the third-party offer. Second, I disagree a little bit that the question in the case is about the execution of the offer. The circuit court states that at the hearing on June 17th of 2014, that the evidence that the circuit court took at trial was on whether or not the sellers had proof of the deposit of the earnest money and whether or not that was tendered. There wasn't really a question. There was no question at all that the contract had been executed and redacted. And the court accepts as true that it was redacted and that the redactions were permissible. But let me ask you this, and you're right. I apologize. I kind of moved over to Section B. Under Section A, so if we're referring to the third-party offer to mean that it is the acceptable modified offer, does that mean that the holder is entitled to all of the documents, indicia, evidence of what the seller, and in project, required in order to determine that it was a modified offer? No, it does not. All that's required under the law is that the holder of the right of first refusal receive reasonable notice of the essential terms of the third-party offer. And what are those essential terms? The price, the description of the property, the closing date. The names of the parties had First 38 not negotiated that right away. And that's it. Now, with respect to the attachments themselves, getting back to, I think, a previous question, when you look at paragraph 2A, little i, and little i, little 2, the term attached and incorporated and made a part hereof is only found in paragraph 2A2 and not 2A1. So to the extent that we hold or decide that First 38 had any right to interpret the terms of the offer made by the Geraces, the argument must necessarily fail because if the purchase, if the earnest money tender were a part of the offer, then its attachment and incorporation, those words would have been found in paragraph 2A1, and they're not. Let me flip the scenario a little bit for a different hypothetical. Let's say it's Bill Gates that's making the offer. And NM Project says, Mr. Gates, we don't need an earnest money deposit. We know where you live. We know how to take care of this situation if it goes south. Is First 38 entitled to know that it's been waived, that the offeror didn't have to put down an earnest money deposit? So First 38 says, well, I'm not going to either. I'm going to match this. I get the same deal that Bill Gates gets. So in that case, isn't First 38 entitled to see everything that the parties have agreed upon? It is a form offer, but form offers can be amended, can be changed. We can put addendums on them. In that hypothetical, that is a separate agreement to specifically waive a provision of the contract. But what we argue, and I firmly believe, that payment is a term of performance anyway. It's not a part of the offer. And we cite Illinois cases, many of them, stating what an offer is. And to the extent that that needs to be read into the contract, this court just ought to read in the same definition that other courts have held. Now, while I'm talking about case law, I'd like to bring up a point that I think tells a little bit of a different story within this case. In our brief on this appeal, we cite five cases that talk about rights of first refusal, including the Lakeshore Club case. The Circuit Court cites an additional case, which is Kellner v. Bartman, which I've already briefly discussed. First 38 does not cite a single case, other than the Lakeshore Club case, to support its positions in this court. And if you look at the cases other than Lakeshore Club, which is a first district case, that we cite, total of six if we include Kellner v. Bartman. In three of those cases, the holder of the right of first refusal loses as a matter of course. The other three, two of them were Massachusetts cases, where one, there was no notice at all sent to the holder of the right of first refusal. And in the second, there was a question of fact. It's the agricultural land use case. There was a question of fact as to whether or not that municipality was on notice of the intent of the seller or the buyer to convert the property to non-agricultural use. And then the other case where the holder of the right wins is Kellner v. Bartman, which is another case where not a single notice, not an oral notice, nothing was sent from the seller to the holder of the right. This is the only case that we have found nationwide where the holder of a right of first refusal was sent notice telling them exactly what the property was, when it was to close, what the purchase price was, a five-page addendum. And nevertheless, the court held that that notice was insufficient to put the holder on notice of the fact that they had to act to protect their rights. The circuit court, by doing so, has made itself into a minority of one and taken a position that under Illinois law ought not to be maintained. And when you look at the only justification for its decision, it is the Lakeshore Club case. And the Lakeshore Club case involves a set of facts wholly different from this. But before getting into that, I think the interesting point is that the holder of the right in the Lakeshore Club case did not get the notice that was required to it under the right of first refusal. It was entitled to written notice, never got it. And nevertheless, the appellate court held that it was on the equivalent of proper notice because it knew that there was an offer for the sale of the property, and it knew the terms of that offer, and it attempted to act but ultimately couldn't. And the bona fide nature of the offer that needed to be made in that case was the holder of the right had to make a bona fide offer. And they couldn't because to purchase the property, they necessarily relied on selling it to yet another third party who would then lease it back to them. In this case, the bona fide offer has to be made by the third party, not by the holder of the right. And there is no reason to believe that First 38 had any right to make any independent determination as to the bona fides of that offer. Okay. Your time is up. Thank you. Thank you. Thank you. May it please the Court. James E. Benak on behalf of First 38, the Appellees. Justice Lee, I'd like to start with the point that you made with respect to the contracts here. I'd like to talk about this contract and not other contracts and what this contract provides. There are two contracts at issue here. The first is the right of first refusal, which you discussed earlier. And the second, also touched on, is the purchase offer, which comes from, in this case, the Geraces to NM Project Company. The purchase offer clearly provides, at Section 2A1, as the Court stated at pages 18 and 19 of its opinion, excuse me, 19 and 20, the third-party offer purchase agreement expressly provides that, quote, That's what appears in the purchase offer. And as a matter of fact, the Geraces, notwithstanding counsel's argument that this is merely a term and not a condition, the Geraces actually tendered that earnest money, clearly required under the purchase contract, clearly accomplished, and not... Counsel, excuse me, what is your name, sir? James Benak. Mr. Benak, your contention is that there was a requirement that you determine whether or not the offer was bona fide. Did the right of first refusal, did that document say that your client had that right? Absolutely. Where does it say that? The right of first refusal states, and this is also quoted by the judge at trial court at the bottom of page 14. I know what the judge said. I'm asking you whether the document out of which this dispute arose gave your client that right. Yes. The third-party, the ROFR, the right of first refusal, states very clearly, Upon receipt of an acceptable bona fide offer to purchase the additional units or any portion thereof, the seller shall notify the purchaser of a third-party offer and deliver to purchaser a copy thereof. Okay. So did they, and you're saying they didn't do that. What didn't they, what about that paragraph didn't they do? They didn't deliver a copy of the purchase offer. So what did they deliver? They delivered everything except the earnest money, evidence of the earnest money deposit. Where in that document does it say they need to show the evidence of earnest money? Well, what it says is that we're entitled to a copy of the purchase contract. Without the evidence of the earnest money deposit, without the evidence of the ability of the purchaser to perform, the contract is not a bona fide offer or the offer is not a bona fide offer. So who determines whether the offer is bona fide? Is it the seller or is it the purchaser or is it your client? Who gets to decide the bona fide language? Well, it's clearly, in this case, the right of the holder of the right of first refusal. My client, 138, had the opportunity and bargained for the opportunity to see the bona fides of any potential purchaser, any third-party offeror. If that's so, couldn't you have written that into the language of the contract with some clarity? Because that's the whole bone of contention. That's why you're here in this court. They're saying that they gave you everything that the document required, and you're saying that they didn't. So my question is, couldn't it have been written with more clarity? And since it's not, I mean, how do we know your version of that document is correct? Respectfully, it is written into the right of first refusal. It states very clearly that upon receipt of an acceptable bona fide offer. I think my question is a little bit more narrow. Perhaps I wasn't clear. I was asking you, who gets to determine whether the offer is bona fide? Very clearly, my client, Your Honor. And that's found in the Lakeshore case. Now, counsel talked about the Lakeshore case a little bit as if because, in that case, Lakeshore was the holder of the right of first refusal, that somehow that changes the import of that case. It doesn't. The proposition that that case stands for is that a person, in order to be a bona fide, in order to present a bona fide offer, has to demonstrate that they are ready, willing, and able to perform. The obligation to demonstrate that you are a bona fide purchaser, that you have a bona fide offer, falls on the person who is going to be ready, willing, and able to perform. It doesn't matter whether that's the holder, as in this case, of the right of first refusal, or in the Lakeshore case, Northwestern, or excuse me, in the Lakeshore case, Lakeshore. The person who is obligated to show that they are a bona fide purchaser has the obligation to show that they are ready, willing, and able. That burden falls on the person who is attempting to purchase the property. So the crux of your contention is that they should have provided a document that showed the payment of the earnest money and the identity of the third-party purchasers. Is that what you're arguing? No. We specifically barred under way the right to see the identity of the third-party purchaser. That's not the point. The point is that the contract, the offer to purchase, specifically provided for an earnest money deposit, and that deposit was made. Our contract, our offer, specifically says that we're entitled to see a copy of the offer. So if they had given you a copy of that deposit of the earnest money with the identity of the depositors redacted, that would have been sufficient for you? Yes, it would have been. And that was not done. I have a question. You said it is the holder that determines whether the offer is bona fide. Do you mean that to say whether it is the acceptable bona fide offer? The holder has the right to determine whether the offer is bona fide. Okay. What about the acceptable part? Well, the acceptable part, actually that was part of the negotiation between these lawyers. The acceptable part was fine with our lawyer because it wouldn't be even presented to us if it wasn't acceptable to NM Project. It was acceptable to them. So it's a bifurcated sort of right to determine? I mean, the seller gets to determine is this an acceptable price, right? So first 38 doesn't go send in somebody to offer 30 grand on it. And then the seller comes back and says, okay, I have found this acceptable. Now you have to tell me whether it's bona fide. Does that not seem to be putting the cart before the horse? Not at all, Your Honor. An offer that's acceptable to NM Project may not be a bona fide offer. The whole point of demonstrating a bona fide offer is, as the Court stated, to make sure that we did not have a phony or sham offer in front of us. And we're entitled to determine that. And the Lakeshore case sets that forth very clearly, that the ready, willing, and able standard applies to any third-party purchaser as part of our ROFR. Can you not just presume from the purchase officer that if the language indicates that attached there is an earnest money deposit, that that means in order for it to have been acceptable to NM Project, and in order for them to even offer it to First 38 as a potential bona fide offer, there must have been some deposit that was satisfied. I don't think we're entitled to rely on that. I think we're entitled to see, as we bargain for, that the offer is bona fide. And we're entitled to see the evidence of the tender of the earnest money, which the trial court found was the sine qua non of the offer itself. So in your opinion, this is an unambiguous? Yes, it is unambiguous, Your Honor. And that's not my opinion. That's what the contract says. It provides very clearly that we are entitled to test the bona fides of the offeror by viewing the earnest money, the evidence of the earnest money. Well, how do we know what? Oh, I'm sorry. Where does it say that in the contract? Where does it say you're entitled to test the bona fides? Well, the contract has to be viewed in light of settled law. And the settled law is that a bona fide purchaser is a purchaser who is ready, willing, and able to perform. And that's the Lakeshore case. And when you look at the contract in the context of settled law, that's what it means. And you can also look at what Mr. Lowenstein and Mr. Goldstein did, and it was very clear to the trial court that the bona fide part was put in by Mr. Goldstein to protect my client, First 38. He was free to expand on what he thought bona fide meant. Correct? In the negotiation on the right of first refusal. Certainly. He was. And just using the naked term bona fide, he was relying, in his mind, to protect himself from some sort of phony situation being placed in his lap, that bona fide would protect him. But essentially it's a bit vague, isn't it? I don't think it's vague at all, with all due respect. I think that when you view that, what bona fide means, in the context of both the purchase offer and in the context of settled law, it's clear that in order to have a bona fide offer, at least in the mind of N.M. Project, they specifically said, this is not an offer until we get earnest money. That's part of the record in this case. Mr. Schultz stated it. But that's not written in the terms. No, but it's clear. So you're asking the court to write the terms that you'd like included. Absolutely not. We're very satisfied with the term bona fide. It has an acceptable meaning. Both Mr. Schultz and Mr. Lowenstein said that, that without an earnest money deposit, there is no contract, there is no offer. Bona fide means that you have to- That could have been very simply stated in the right of first refusal. Well, I think if you look at it in the context of the settled law, Justice Harris- Well, then two words accomplish what ten words do. Lawyers, good lawyers, use two words. And bona fide accomplished what needed to be accomplished here. It very clearly stated that we were entitled- Other than the earnest money deposit, what else would be required in a bona fide? Well, the roofer entitled us to a copy of the third party offer, which means everything. They argued that we didn't say complete copy. Well, we didn't say partial copy. We said we wanted a copy of the purchase contract. The copy of the purchase contract was not given to us. All of it was given to us except what the judge called the sine qua non of the contract, and that is evidence of the earnest money deposit. And to take the position that they take that that's not important or not required is completely contrary to the actions of the parties here. The juracies tendered the payment. It was part of the contract. It was required by, as Mr. Schultz admits, required in order to form the offer. We didn't get that. So we didn't get a copy of the offer. If you would have gotten just some sort of proof or evidence of the payment of the earnest money deposit, even with redacted confidential information, is it in the record already that that would have been acceptable? Yes, that is in the record, and that would have been acceptable. Well, let's say we were to find it ambiguous. Why don't you tell us about the evidence that you believe supports your position? Well, if you were to determine that it's ambiguous, I actually think that the evidence that was presented at trial as to the meaning of the contract overwhelmingly supports our position. If you look at what Mr. Lowenstein said and what Mr. Goldstein said and what Mr. Schultz said about whether or not, well, let's take the formation of the contract first. Why was, in the negotiation, why was bona fide added to the ROFR? It was added by Mr. Goldstein to protect verse 38. The court, after listening to the evidence, determined that that meant that we were entitled to see the bona fides, the ready, willing, and able standard from any prospective purchaser. Mr. Lowenstein admits that without an earnest money payment, there is no offer. Mr. Schultz admits that without an earnest money payment, there is no offer. Without evidence of the earnest money in the offer that was presented to us, there is no bona fide offer. By the evidence submitted at trial, by the admissions of the representatives of both verse 38 and Mr. Geraci, that's the outcome. In addition, and I think I've touched on this already, the Geraci's actually performed the contract in the way we say it should be performed. They tended to earnest money. The counsel argues that that's not a term that's important, but it was important enough that they required it. Mr. Schultz said it was required and they did it. And they didn't show us. So they didn't show us the third party offer. So your position is that the right of refusal was never triggered in the first place because all of the conditions preceding to it were not satisfied. Yes. But alternatively, you made an offer anyways. Yes, we did. That matched the Geraci's offer. Yes, we did. Okay. Thank you. Thank you. We respectfully request that this court affirm the judgment of the trial court. Thank you. Thank you. Mr. Parker. Thank you. Illinois, like most states, abhors restraints on alienation. It's the public policy of the courts of this state to strictly construe such rights against the holder of that right. Nevertheless, throughout these proceedings and including here today, First 38 is asking this court to construe the right of first refusal broadly in their favor rather than strictly against them. This court ought to decline that invitation. Dealing specifically with some of the mechanics that were just discussed, the time frame of making this offer and of acting on the right of first refusal is important in this case. First 38 negotiated not for 24 hours but for one business day, which their representative conceded ended at 5 o'clock p.m. the next day. The proof of the Geraci's ability to close under the rider to their contract, which, by the way, First 38 had, proof from the Geraci's was not due until two days later, meaning that First 38 had to act before NM Project would ever have had any proof that the Geraci's were able to close the deal. Because that's true, their arguments about the Lakeshore Club case must necessarily fail for the reasons I've already stated, which is that there are critical factual distinctions between the two. And the idea that this term bona fide was inserted to protect First 38 is I think very clearly a post hoc invention of First 38. Mr. Parker, when you say that based on the language of the right of first refusal and the terms required under the purchase officer, the natural sequence would have been First 38 had one day to accept, to either tender a similar bid offer on the penthouse unit, and then only then would, I'm sorry, then as a matter of just the requirements under the purchase offer, the Geraci's would have had additional time to satisfy the earnest money deposit requirement, correct? I actually disagree with that. I'm sorry, I misunderstood. In the rider to the Geraci's offer, right, there's an acknowledgement that there's a right of first refusal. But nevertheless, it says that the proof of the ability to close the deal is due within two days of the payment of the earnest money. So on the face of it, or two days from signing of the contract, on the face of it, the Geraci's make their offer on June 3rd. It's tendered to First 38 on June 4th. Geraci's have until June 5th. Okay. I understand that. What I'm trying to say is, kind of inartfully, isn't it the circumstances on the 5th that make it a bona fide offer? In other words, is the offer not ready, it doesn't constitute an acceptable bona fide offer until the 5th after receiving proof of the offeror's ability to close. At that point is when it's tendered and when the right of first refusal is actually triggered. I wouldn't think so because the Geraci's either had the ability or didn't have the ability to close when they made the offer. But even so, that's not something that First 38 negotiated to see. I think the course of dealing here is important because it's important to remember that First 38 had already purchased a unit from this same seller. There's nothing in the record, in fact the evidence, the testimony is to the contrary, to suggest that an NM project ever dealt with First 38 other than in good faith. Mr. Lowenstein, Mr. Goldstein liked and trusted Mr. Lowenstein. Mr. Castellazzo never doubted Mr. Schultz's fair dealing with him. And that drastically undermines the contention that First 38 was concerned about a sham offer. It's, I think, very clearly, and this is getting to the weight of the evidence, contrary to the manifest weight of the evidence to the extent that we reach plural evidence. To come back to the court's question a little bit more directly, even if that were true, it doesn't make a difference because First 38 didn't have the ability to independently determine the bona fides of the offer. If they did, what right does that give them? That they can veto the sale? I asked your opponent, who gets to determine whether the offer is bona fide or not? I wanted to ask you the same question, but you answered it before I asked it, so that's okay. And it has to be the seller to answer it again. It has to be. First 38 never had the right to sell the property. The only person or entity that had the right to list and sell the property was NM Project. If there's nothing further, we actually would respectfully request that the court enter judgment in favor of the Geraces and against First 38 in order-specific performance of their contract. Thank you. Thank you to both sides. And thank you also to counsel for NM Project for coming to answer any questions that we may have. The court will take the matter under advisement. Thank you. Court is adjourned.